IN THE

# United States Court of Appeals

# For the Second Circuit

————

AUGUST TERM, 2022

ARGUED: FEBRUARY 23, 2023
DECIDED: JULY 16, 2024

No. 21-1247-pr

BETIM KAZIU,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

————

Appeal from the United States District Court
for the Eastern District of New York.
1:09-cr-00660-FB – Block, *District Judge.*

————

Before: CALABRESI, LYNCH, ROBINSON, *Circuit Judges.*

————

On April 14, 2019, Betim Kaziu filed a petition for habeas corpus relief under 28 U.S.C. § 2255, alleging that two of his four Counts of conviction were unlawful given intervening Supreme Court precedent. On May 3, 2021, Judge Block of the Eastern District of New York granted Kaziu's petition in part, vacating his conviction as to Count Four following an intervening change in law, and reducing the sentence for his original conviction on Count One—conspiracy to commit murder in a foreign country—by two years, from 27 years to 25. The district court resentenced Kaziu on the papers submitted, without a full in-person sentencing proceeding. Kaziu challenges the procedures required by district courts following a vacated conviction. He maintains that *de novo* resentencing is always required following a vacated conviction on a collateral appeal, and even if it is not always required, that *de novo* resentencing is required in his case because his convictions are inextricably linked. We need not determine the full scope of a district court's discretion to dispense with *de novo* resentencing following vacatur under § 2255 of one of multiple counts of conviction, because we conclude in this case that the district court exceeded its discretion in declining to conduct a full *de novo* resentencing on account of two factors: (i) the resentencing judge is not the original sentencing judge, and (ii) the defendant plausibly alleges changed circumstances. Accordingly, we **VACATE** the sentence imposed and **REMAND** for a full resentencing.

Judge Calabresi concurs in the judgment in a separate opinion.

Judge Lynch concurs in the judgment in a separate opinion.

_____

YOAV M. GRIVER, Zeichner Ellman & Krause LLP, New York, New York, *for Petitioner-Appellant Betim Kaziu*

BREON PEACE, United States Attorney, SARITHA KOMATIREDDY AND ROBERT M. POLLACK, Assistant United States Attorneys, Eastern District of New York, Brooklyn, New York, *for Respondent-Appellee United States of America.*

---

CALABRESI, *Circuit Judge*:

## BACKGROUND

28 U.S.C. § 2255 allows prisoners in federal custody to attack the legality of their convictions or sentences collaterally. When a federal prisoner successfully challenges one or more of his convictions or sentences as invalid, § 2255(b) gives the district court, in certain situations, the discretion to choose among four remedies: the court may discharge the petitioner, resentence them, grant them a new trial, or correct their sentence. *Id.* In this case, we address two of these remedies—resentencing and correcting the sentence—and the bounds of the district court's discretion in choosing between them.

## FACTUAL BACKGROUND

This case arises from Betim Kaziu's convictions for his plan and attempt to join and aid foreign terrorist organizations. Kaziu was born in Brooklyn in 1988.

He lived there until February 2009, when he and his friend and co-conspirator,

Sulejmah Hadzovic, flew to Cairo, Egypt, to join a terrorist organization and fight

jihad.

Trial and Sentencing

Kaziu began his radicalization in 2007, around the age of 19. Videos posted

online by terrorist groups depicting the United States as oppressing and

murdering Muslims abroad prompted Kaziu and Hadzovic to embrace militant

jihadism. In late 2008, the pair started planning to travel abroad in order to join a

terrorist organization. Early the next year, they flew to Cairo, Egypt, intending to

study Arabic and fight jihad.[1] While in Cairo, they met with individuals who could

help them gain access to terrorist training facilities and weapons for the purpose

of killing U.S. troops. In the summer of 2009, Hadzovic had a change of heart and

eventually returned to the United States.

In July 2009, Kaziu traveled alone from Egypt to Kosovo to formulate a

terrorist plot to kill Americans there. But his plans were intercepted. On August

---

[1] We adopt the definition of "fight jihad" as it was understood by Kaziu and Hadzovic. Hadzovic testified that jihad meant "fighting in a war" with the intention of killing U.S. troops and their allies, among other entities, in "places like Afghanistan, Pakistan, Chechnya, Somalia and Israel." Trial Tr. 341–44.

4

25, American law enforcement alerted Kosovar authorities of the possibility that Kaziu was engaged in a terrorist plot. A search of Kaziu's Kosovo apartment recovered Kaziu's laptop and video camera, his identification and travel documents, and a firearms catalog. In one of the recordings found on the video camera, Kaziu professed his imminent plan to die for Allah. Kaziu was arrested in Kosovo on August 27, 2009, and he was interviewed by FBI agents on August 28 and September 14 while incarcerated there. Kaziu was subsequently indicted in the Eastern District of New York on September 18, 2009. He was expelled from Kosovo and transferred to U.S. custody at Stewart Airport in Newburgh, New York on September 23, 2009.

The case proceeded to trial in 2011. The government sought conviction on four counts: conspiracy to commit murder in a foreign country in violation of 18 U.S.C. § § 956(a)(1), 956(a)(2), and 3551 *et seq.* (Count One); conspiracy to provide material support to terrorists in violation of 18 U.S.C. §§ 2339A(a) and 3551 *et seq.* (Count Two); attempt to provide material support to a foreign terrorist organization in violation of 18 U.S.C. §§ 2339B(a)(1), 2, and 3551 *et seq.* (Count Three); and conspiracy to use a firearm in violation of 18 U.S.C. §§ 924(o), 924(c)(1)(B)(ii), and 3551 *et seq.* (Count Four).

The jury found Kaziu guilty on all four counts. On each of Counts One and Four, Kaziu faced a statutory sentence range of any term of years or life imprisonment, and, on each of Counts Two and Three, a statutory sentence range of up to 15 years' imprisonment. Based on Kaziu's total offense level of 45 and his criminal history category of VI, the revised Presentence Report recommended a sentence of life imprisonment.

At his sentencing hearing, Kaziu addressed the court, maintaining his innocence (on the ground that he had not harmed anyone) and expressing some regret. But in light of Kaziu's continued defiance and limited acceptance of responsibility, the court (Gleeson, *J*.) explained that it did not "completely accept as genuine what [Kaziu] said" about feeling remorse, fearing it was merely "opportunistic." The court considered the other sentencing factors required by 18 U.S.C. § 3553(a) and sentenced Kaziu to 27 years' imprisonment on Count One, the statutory maximum sentences of 15 years on each of Counts Two and Three, and 27 years on Count Four, all to run concurrently. The total custodial sentence of 27 years was to be followed by lifetime supervision. This Court affirmed the convictions and sentences on direct appeal. *See United States v. Kaziu*, 559 F. App'x 32 (2d Cir. 2014).

Kaziu's 28 U.S.C. § 2255 Petition

In 2019, Kaziu petitioned the district court for post-conviction relief under 28 U.S.C. § 2255. He argued that his convictions for the murder conspiracy (Count One) and for the firearm conspiracy (Count Four) were unlawful given intervening Supreme Court precedents. The government disputed Kaziu's contention that his murder conspiracy conviction was invalid, but it agreed that Kaziu's firearm conspiracy conviction could no longer stand because *United States v. Davis*, 588 U.S. 445 (2019), invalidated as unconstitutionally vague a statutory provision on which the firearm conspiracy count was based.

At the time, the government took its long-held position that because one of the convictions—rather than one of the sentences—was invalid, Second Circuit law required *de novo* resentencing on each of the three remaining counts. J. App'x. at 103 (citing *United States v. Powers*, 842 F.3d 177, 179 (2d Cir. 2016) (per curiam), for the position that "the remedy for conviction error is remanding for *de novo* resentencing"). *De novo* resentencing requires the district court to "reconsider the sentences imposed on each count, as well as the aggregate sentence," formulating anew the appropriate sentence for each unreversed conviction under the

7

individualized assessment required by § 3553(a). *United States v. Rigas*, 583 F.3d 108, 118 (2d Cir. 2009).

The district court (now Block, *J.*) did not immediately rule on Kaziu's petition. Instead, in October 2019, it entered an order scheduling a resentencing proceeding "[b]ased upon the Government's reply." J. App'x at 25. The sentencing hearing, initially set for February 2020, was repeatedly delayed by the parties' requests for extensions to submit documents and the COVID-19 pandemic.

The district court eventually scheduled the *de novo* resentencing hearing to occur telephonically in February 2021. But the government objected. A month before the telephonic hearing, it requested adjournment until health conditions improved, reasoning that, generally, "felony sentencing proceedings must take place in person" and that limited pandemic-era statutory exceptions to this rule did not apply. J. App'x at 261–63 (citing Fed. R. Crim. P. 43(a)(3)). The court acquiesced and pushed the *de novo* resentencing hearing to an in person proceeding in May 2021.

Kaziu, operating on the view that he would be resentenced *de novo*, had already submitted a sentencing memorandum contending that renewed

application of the § 3553(a) factors merited a sentence of no longer than 15 years given his reform during his intervening time in prison.

The government, however, changed its position as to the appropriate remedy for the unlawful conviction. In March 2021, two years after it had asserted that *de novo* resentencing was *required* and two months after it had argued that a *de novo* resentencing hearing conducted telephonically was improper, the government filed a memorandum arguing that *de novo* resentencing was not needed after all and, in fact, was not warranted here. The government's new memo cited three district court decisions which had held that our rule requiring *de novo* resentencing did not apply where a conviction was invalidated on collateral attack rather than direct appeal. *See* J. App'x at 276–77. Those courts read § 2255(b)'s option to "correct the sentence" to mean that they could vacate the sentence corresponding to the unlawful conviction without re-examining the unreversed convictions or their corresponding sentences at all. *See United States v. Hector Raymond Peña*, 17-cv-03891 (VM), 2020 WL 7408992, at *6 (S.D.N.Y. Dec. 17, 2020), *appeal dismissed*, No. 21-1199 Dkt. 58 (2d Cir. Nov. 17, 2021); *United States v. Medunjanin*, Nos. 19-cv-2371 (BMC), 20-cv-2755 (BMC), 2020 WL 5912323, at *8 (E.D.N.Y. Oct. 6, 2020); *Ayyad v. United States*, 16-cv-4346 (LAK), 2020 WL 5018163,

at *2 (S.D.N.Y. Aug. 24, 2020), *aff'd*, 2023 WL 1975682 (2d Cir. Feb. 14, 2023). That is the course the government's new memorandum urged the court to take—without a hearing, to vacate the 27-year sentence on Count Four, but retain the sentences on the remaining counts. J. App'x at 278–79; 289–90.[2] The government argued that because Count One also carried a sentence of 27 years that ran concurrently with the other sentences, Kaziu's aggregate sentence would remain the same—27 years—despite the vacatur of his conviction on Count Four and its corresponding sentence.

Kaziu vehemently objected and requested that the court hold the *de novo* resentencing as originally planned. *See* J. App'x at 345, 353. He disputed the government's argument that the posture of the conviction challenge—on collateral attack rather than direct appeal—affected the applicability of our *de novo*

---

[2] Notably, in cases where *de novo* resentencing might result in a longer sentence, the government has previously argued that full resentencing was proper, even when the factual interconnection between crimes was virtually non-existent. *See, e.g., United States v. Gordils*, 117 F. 3d 99, 101 (2d Cir. 1997); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (per curiam); *see also United States v. Denoyers*, 708 F.3d 378, 386-87 (2d Cir. 2013) (summarizing the government's argument that *de novo* resentencing requires the district court to consider evidence that was available to the government at the initial sentencing but was not presented). There is no indication that the government has changed its position in such cases. But in cases where *de novo* resentencing might result in a shorter sentence overall, the government now says that such resentencing is not required. The government has not explained the asymmetry.

resentencing rule. *See id.* at 349–50 (citing *United States v. Gordils*, 117 F.3d 99 (2d Cir. 1997) (declining to distinguish between direct appeals and § 2255 petitions in the sentencing context)). He further argued that, even if the government was correct that *de novo* resentencing was not required for all successful collateral attacks on convictions, it was required in his case because his convictions and sentences were interrelated.

In May 2021, the district court issued its decision on both the merits of Kaziu's § 2255 petition and the relief he sought, based only on the parties' written submissions. *See United States v. Kaziu*, No. 1:09-cr-00660-FB-1, 2021 WL 1751156 (E.D.N.Y. May 4, 2021). The court granted Kaziu's petition to vacate his conviction on Count Four, agreeing with both parties that the conviction for the firearms conspiracy was unlawful under *Davis*, *id.* at *2, but it denied Kaziu's petition to vacate his conviction on Count One, the murder conspiracy, finding it unaffected by intervening changes in the law. *Id.*

The court then turned to the remedy for the unlawful conviction on Count Four. Neither party disputed that the text of § 2255 obligated the court to vacate the unlawful conviction. *See* 28 U.S.C. § 2255(b) ("[T]he court shall vacate and set the judgment aside."). The question was whether the vacatur on Count Four

11

required the court to conduct *de novo* resentencing on all of the remaining counts of conviction, or whether it could merely "correct the sentence" by vacating the sentence corresponding to the unlawful conviction, as the government urged.

The court ultimately took a path between those advocated by the parties— it purported to resentence Kaziu, but did not conduct a full *de novo* resentencing. Citing the three district court decisions that the government had referenced, the court decided that it was not obligated to conduct *de novo* resentencing following every successful § 2255 collateral attack of a conviction. *See Kaziu*, 2021 WL 1751156, at *2. The court concluded that the Second Circuit's default rule of *de novo* resentencing upon conviction vacatur applied only in direct appeals and did not extend to the "meaningfully differ[ent]" context of collateral attacks. *Id.* The court reached this conclusion because of "the 'narrow scope' of § 2255 and the more limited availability of relief under that statute, which 'reflects an interest in the finality of a criminal judgment . . . that is not present on direct appeal.'" *Id.* (quoting *Medunjanin*, 2020 WL 5912323, at *8).

But unlike the courts it cited, the district court did not just vacate the part of the sentence based on the unlawful conviction; it also chose to reweigh the § 3553(a) sentencing factors pertaining to one of Kaziu's lawful convictions.

Because Kaziu had argued that a 15-year sentence was appropriate, equal to his concurrent sentences on Counts Two and Three, the court re-evaluated his 27-year sentence for Count One, the murder conspiracy. *See Kaziu*, 2021 WL 1751156, at *3. Balancing the seriousness of the offense against both the lack of harm inflicted by the foiled plot and Kaziu's subsequent reform while in prison, the court reduced the sentence by two years, to 25 years, to be followed by lifetime supervision. *Id.* at *4.

The court did not re-examine the sentences for the other remaining convictions. Consistent with its written decision, the district court entered judgment sentencing Kaziu to 25 years on Count One, and 15 years each on Counts Two and Three, all to run concurrently, for an aggregate term of 25 years.

Kaziu timely appealed.[3] He raises three principal arguments. First, he contends that *de novo* resentencing is *always* required where a defendant

---

[3] For jurisdiction over an appeal from a final § 2255 decision to vest in this Court, the district court or this Court must typically grant a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1)(B); *see also Krantz v. United States*, 224 F.3d 125, 126 (2d Cir. 2000) (per curiam). Nevertheless, as this Court ruled in response to Kaziu's motion for a COA to challenge the reasonableness of his sentence, a COA is not required to appeal a resentencing following a successful § 2255 claim. Many of our sister circuits have reached the same conclusion. *See, e.g.*, *Ajan v. United States*, 731 F.3d 629, 631–32 (6th Cir. 2013); *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012); *United States v. Futch*, 518 F.3d 887, 895 (11th Cir. 2008); *United States v. Hadden*,

13

successfully collaterally attacks their conviction as unlawful. Second, he contends that, even if it is not always required, both our conviction errors precedent and due process required full *de novo* resentencing in his case because his convictions were inextricably linked to one another. Finally, he challenges his 25-year aggregate sentence as unreasonable.[4]

While Kaziu's appeal was pending, this Court decided *United States v. Jose Peña*, 58 F.4th 613 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 147 (Mem.) (2023).[5] *Peña* held that the plain text of § 2255(b) affords district courts the authority to choose between, *inter alia*, conducting a *de novo* resentencing on all remaining counts of conviction or merely correcting the sentence. *See Peña*, 58 F.4th at 618–20. Accordingly, *Peña* forecloses Kaziu's first argument that *de novo* resentencing is categorically required whenever a conviction is vacated on collateral attack. But

---

475 F.3d 652, 663–66 (4th Cir. 2007); *United States v. Lafayette*, 337 F.3d 1043, 1046 (D.C. Cir. 2003)*; see also Illarramendi v. United States*, 906 F.3d 268, 270 (2d Cir. 2018) (per curiam) ("[A] COA is not required when appealing from orders in a habeas proceeding that are collateral to the merits of the habeas claim itself."). We reaffirm here that a COA was not necessary to give us jurisdiction to review that challenge.

[4] We do not address Kaziu's reasonableness argument, as we vacate and remand for full *de novo* resentencing.

[5] While this opinion has two different cases with *Peña* defendants, the *Peña* shorthand will be used to describe solely *Jose Peña*'s case, 58 F.4th 613.

*Peña* does not address the thrust of Kaziu's second argument, which concerns the limits of the district court's discretion in choosing among § 2255(b)'s remedies.

*Peña* specifically demurred on this issue. Because in *Peña de novo* resentencing would have been "strictly ministerial" (the district court in *Peña could not* have shortened his carceral term), and hence resentencing would not be needed *even on direct appeal*, *Peña* expressly declined to define the circumstances under which a district court abuses its discretion when it fails to resentence a defendant *de novo* following a *successful collateral attack on a conviction*.[6] *Id.* at 623. *Peña* did suggest that it might be the case that most of the time district courts should be required to conduct *de novo* resentencing even in habeas cases: "[i]t may be that in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies *de novo* resentencing." *Id.* at 623. But it did not decide that question, and neither do we. Rather, we address two factors which make a failure to resentence fully an abuse of discretion in the instant case.

---

[6] *Peña* had failed to show that resentencing would not be strictly ministerial.

**DISCUSSION**

Prior to this Court's decision in *Peña*, we explored the process due to criminal defendants following conviction errors. Specifically, in the direct appeal context, we held that following the vacatur of a conviction, courts were required to conduct *de novo* resentencing, and we detailed the procedural expectations at resentencing: "a district court that is required to resentence *de novo* must reconsider the sentences imposed on each count, as well as the aggregate sentence." *Rigas*, 583 F.3d at 118.

We later noted that this rule did have one viable exception: *de novo* resentencing is *not* required when the resentencing would be "by force of law, 'strictly ministerial,'" meaning that the "defendant has already received, as his or her sentence on an upheld count of conviction, a mandatory minimum sentence." *Powers*, 842 F.3d at 180 (quoting *Burrell v. United States*, 467 F.3d 160, 166 & n.4 (2d Cir. 2006)).

In *Peña*, however, we declined in the collateral attack context to mirror our direct appeal *Rigas/Powers de novo* resentencing rule. We cited the statutory language of § 2255(b) which affords district courts the authority to choose between sentence correction and resentencing. But *Peña* explicitly noted that this authority

16

remained subject to abuse of discretion review, and that, perhaps even in *most* non "strictly ministerial" cases, a court would abuse its discretion when it failed to conduct *de novo* resentencing. 58 F.4th at 623. Here, two factors combine to limit the district court's discretion to dispense with plenary resentencing.

**A.**

The district court judge in this case, Judge Block, was not the original sentencing judge. Unlike the original sentencer (here Judge Gleeson) who retains privileged access to the rationale behind the original sentence, a deep familiarity of the facts, and an in-person observation of the defendant's allocution, a new judge ruling on a 2255(b) petition comes to the case without this type of insider information. As a result, it may well be that Kaziu's original sentence relied, at most, minimally on his (now vacated) 924(c) conviction; Judge Gleeson may have determined that the bulk of Kaziu's original sentence on his remaining counts was based on the terroristic conspiracy itself, and not on the fact that this conspiracy when reduced to its individual elements, constituted a statutory "crime of violence." But Judge Block does not know the contours of Judge Gleeson's decision-making and to what degree (if any) the now vacated convictions may have inflated Kaziu's sentences on his remaining convictions. While the

sentencing transcript does not suggest that the sentence imposed on Kaziu's conviction for his involvement a terroristic conspiracy was motivated by whether it was a statutory "crime of violence," there is nothing in the record that suggests it was not. Ultimately, a new judge cannot be certain that simply lopping off the sentence of a vacated count sufficiently remedies a sentencing package that did, in some undetermined, opaque capacity, factor in a now vacated conviction.

Significantly, this very concern was implicit in our discussion in *Quintieri*. There on review of the defendant's § 2255 challenges to both his conviction and sentence, we explained that when one count in a multi-part conviction is vacated, *de novo* resentencing is generally required as we cannot be certain how the "constellation of offenses of conviction" that were considered at sentencing were weighed, and ultimately, to what extent each was determinative to the defendant's sentence. *United States v. Quintieri*, 306 F.3d 1217, 1227–28 (2d Cir. 2002). We there noted that if a conviction is overturned and later remanded, "the constellation of offenses of conviction has been changed and the factual mosaic related to those offenses that the district court must consult to determine the appropriate sentence is likely altered." *Id.* This concern grows more sensitive when the original sentencing judge is no longer present. In such cases, not only has the constellation

and factual mosaic changed, but the original understanding of how that factual mosaic and the constellation was originally packaged together is unknown. The original sentencing judge perhaps could conclude, by referencing notes or consulting other preparation materials, that an overturned conviction was an insignificant piece of the original sentencing decision, an outer star that never really contributed to the greater constellation. But a new judge does not have that same knowledge.

The new judge may, as our concurring colleague suggests, hypothesize from the sentencing record or the sentence itself how the sentencing judge viewed the relationship between the now-vacated count and the remaining counts. Judge Lynch Concurrence at 7–9. But a learned hypothesis is a weak substitute for direct knowledge of how the "constellation of offenses of conviction" impacted the defendant's sentence. *Quintieri*, 306 F.3d at 1227–28.

**B.**

Kaziu presented plausible allegations of changed circumstances that suggest that the original rationale underlying the sentence—that he was a committed and unredeemed terrorist—no longer applies. Kaziu submitted to the court a lengthy memorandum in support of *de novo* resentencing, which stressed

19

that several factors which may have contributed to his original sentence are no longer present. *See* J. App'x at 140–214.

First, Kaziu has exhibited virtually no violent tendencies since his incarceration. Kaziu has spent the preceding 11 years in a series of federal prisons with a "near-flawless disciplinary record[,]" his sole infraction was a fight in his very first year "when another prisoner stole his wrist-watch." J. App'x at 185. Kaziu has since avoided conflicts.

Second, Kaziu has moved on from his religious extremist ideologies. Kaziu plausibly detailed that his relationship with the Qu'ran has changed after he began studying and reading Arabic. Kaziu notes that his new language skills provide a personal relationship with the Qu'ran "rather than relying on interpretations from others[,]" and this ensures that he is less "vulnerable to [] misinformation of anyone who claim[s] to be an 'expert[.]'" *Id.* at 191. Kaziu explicitly concedes that he was "caught in an extreme interpretation of the narrative of Islam" and has "replace[d] the crude one [he] had at nineteen" with an interpretation that calls for righteous, virtuous behavior. *Id*. Kaziu further bolstered this position when his counsel submitted an expert consultation from a qualified authority on American *jihadi* conversion, Dr. Yasir Qadhi, who noted that Kaziu "did view extremist

ideologies with some sympathies, but ha[s] since moved on and clearly seen that they were wrong." *Id* at 193. Dr. Qadhi has further opined that he does not find Kaziu to represent a continued threat to society.

Third, Kaziu has invested in his educational future. Kaziu, who was a ninth-grade dropout when he was first incarcerated, has since earned his GED, received certifications in psychology, nutrition, and wellness courses, completed a Vocational Trade Culinary Arts Program, and envisions pursuing an undergraduate degree and social work. *Id.* at 186–88.

Kaziu has thus plausibly claimed that he is nonviolent, has reordered his relationship with Islam, and has positioned himself to be a productive member of society. This is a foundational departure from the type of person Kaziu was when he was originally arrested, convicted, and sentenced. We conclude that Kaziu adequately alleges sufficient changed circumstances so that a district judge might wisely consider his arguments at a full *de novo* resentencing[7].

---

[7] While Judge Lynch's concurrence is correct that our sentencing system is generally unfriendly to revisions of sentences due to changed circumstances, the authorities he relies on for this position do not apply to the situation before us. All involve cases where following the imposition of a facially correct sentence, a litigant appeals to the district court for a "second look" solely due to changed circumstances. Congress and the courts have prudently circumscribed these situations to avoid what had become a deluge of attacks on valid sentences. Here, instead,

* * *

Taking these two factors at least in tandem, because the resentencing judge is not the original sentencing judge and Kaziu presents plausible arguments of changed circumstances, we conclude that the district court exceeded its discretion in declining to resentence *fully* following Kaziu's successful habeas petition.

## C.

We note that Judge Block did wrestle with deciding the appropriate process Kaziu should receive, ultimately deciding to conduct a "resentencing" on the papers. To wit, Judge Block did more than solely strike the vacated count and its sentence, but "rebalanc[ed] the 3553(a) sentencing factors," and even changed the sentence on a remaining count by reducing the sentencing on Count One from 27

---

Kaziu's conviction has been successfully challenged, and his original sentence is now concededly incorrect. It is in the context of deciding how best to reach a proper sentence that the majority deems changed circumstances relevant.

Significantly, if a full resentencing is decided upon, the panel (including the concurrer) agrees that changed circumstances are a proper consideration in determining what the new sentence should be. The decision, whether merely to correct the invalid sentence by dropping the part that was based on the invalid conviction or to engage in a full resentencing, is a decision that seeks, in the particular circumstances of any given case, to give rise to a proper sentence. In such circumstances, everything that is relevant to reaching a proper sentence is relevant to the decision of whether to correct or to resentence. And that, necessarily includes changed circumstances.

to 25 years. *Kaziu*, 2021 WL 1751156, at *2, 4. But this approach is insufficient. Though Judge Block did endeavor to resentence Kaziu, given the two factors identified above, we conclude that a full *de novo* resentencing was required.

This is so because a resentencing is, for the purposes of procedural protections, no different from an initial sentencing: "[A] defendant has a constitutional right to be present [during resentencing], because technically a new sentence is being imposed in place of the vacated sentence." *United States v. DeMott*, 513 F.3d 55, 58 (2d Cir. 2008) (quoting *United States v. Arrous*, 320 F.3d 355, 359 (2d Cir. 2003)). While Judge Block's resentencing process did engage in the necessary legwork of revisiting the 3553(a) factors, the result was not the full, *de novo* resentencing our holding requires (critically, Kaziu was never given the opportunity to give his new allocution, and thus never came before the court). In sum: when a resentencing is required, it necessitates the full panoply of procedural protections defendants are entitled to in a standard sentencing. This was not done in this case.[8]

---

[8] Because we decide this case on abuse of discretion grounds, we expressly leave open two questions that *Peña* did not decide—questions that are the subject of separate concurrences in this case.

23

## CONCLUSION

Accordingly, we **VACATE** the sentence imposed and **REMAND** for *de novo* resentencing.

---

The first is whether resentencing is required in *any* case in which resentencing would not be simply ministerial. *See* Judge Calabresi Concurrence.

The second is whether — even if a correction, rather than a resentencing, would be sufficient — once a district court opts to resentence, it must meet all the procedural requirements of a full resentencing. *See* Judge Lynch Concurrence in the mandate.

CALABRESI, *Circuit Judge*, concurring in the judgment:

While I fully agree that this case can be decided on the grounds relied on in the panel opinion, *Peña* and our previous cases leave open the larger question of whether there should be *any* difference in resentencing when a case arises from a habeas petition, instead of on direct appeal. In *Peña*, we suggested that (i) the statutory language of § 2255, and (ii) district court approaches to resentencing in habeas cases might lead us to a adopt a more flexible standard in habeas as against direct appeal. 58 F.4th at 618 – 620. I am not convinced, and I write to explain why there is no sound reason to introduce any distinction in how we treat a district court's scope of discretion in resentencing, following a successful habeas petition as opposed to a direct appeal.

In doing so, I want to make clear that I am taking no stand on what has been our court's extremely strict requirement for *de novo* resentencing on direct appeal. Unlike some of our sister circuits, we allow anything short of a full resentencing only when doing so would be purely ministerial. It is concern with

this strict rule – not followed in other circuits – that I believe is causing some of our district courts to treat habeas differently. But if this is so, we should join other circuits and reconsider our direct appeal case law, and not make an additional, unnecessary, and undesirable distinction between habeas and direct appeal.

## I.

Succinctly, the question that I believe this case presents is whether district courts should treat resentencing on the remaining counts after vacatur of a conviction differently in habeas cases as compared to direct appeal cases. *Peña* raised that question, but did not answer it, because in *Peña* a full resentencing would not have been required, even if the case had been on a direct appeal, as the resentencing would have been purely ministerial.

I begin by noting that the harm to a defendant who is denied a *de* novo resentencing hearing is no different in the habeas and direct appeal contexts. The risks of violating defendants' right are the same: sentencing a defendant based on something other than "the constellation of offenses for which the defendant was

*convicted.*" *Quinteri*, 306 F.3d at 1227 (emphasis added). Moreover, the burden on district courts of conducting a full resentencing hearing is no greater following a successful habeas challenge than following a successful direct appeal.[1]

What reasons then might support a different treatment of the two? The reason specifically mentioned in *Peña* is that statutory language in § 2255 explicitly provides that district courts have the authority to correct as well as to resentence. But that same authority has been assumed in direct appeal cases, and indeed it was implicit in our holding that a full resentencing was not needed in cases where the resentencing was purely ministerial. *See, e.g., Powers*, 842 F.3d at 180 (identifying the limited circumstance in which district court could correct a sentence on remand rather than resentencing). And the same implicit grant of discretion underlies the decisions of our sister circuits allowing corrections rather than resentencing in many direct appeal cases. The fact that a statute expressly confers authority to do what courts already had the power to do absent statutory

---

[1] While we understand that the judicial system would be tasked with conducting resentencing hearings more regularly, we do not find the fiscal and administrative burdens associated with de novo resentencing particularly onerous. A de novo resentencing hearing—"a brief event, normally taking less than a day and requiring the attendance of only the defendant, counsel, and court personnel"—is not particularly onerous, either financially or administratively. *United States v. Williams*, 399 F.3d 450, 456 (2d Cir. 2005).

language, does not tell us anything about when that authority should be used. It does not guide us as to what would be an abuse of direction in the use of that authority, and so does not justify a distinction in resentencing discretion for habeas and direct appeal cases.

What other reason might then justify different treatment? The one significant difference between habeas resentencing and direct appeal resentencing is its effect on the finality of judgments. I therefore turn to whether the judicial system's interest in finality suffices to permit district courts to avoid full resentencing in non-ministerial habeas cases.

**II.**

It is well established that finality "attaches" once a court of last review either affirms a conviction on the merits or declines to consider a discretionary appeal, or when the deadline to seek further appellate review has simply expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003). But even after finality "attaches," the interest in finality is not absolute, particularly in the context of criminal judgments.

Notably, in all these resentencing cases, finality has already been deemed not to be determinative. Whether arising on direct appeal or on habeas, these cases are before us because a *conviction* has been reversed despite finality. The question

4

then becomes: is there an additional significant finality interest solely with respect to the sentence?

In general, finality in sentencing does not bear the same weight as finality does with respect to a conviction.[2] In the conviction context, there is significant risk that evidence becomes stale as time passes between initial conviction and post-conviction review, *see Allen v. Hardy*, 478 U.S. 255, 260 (1986) (per curiam). And we seek to limit the psychological suffering of victims who might otherwise be forced to testify again if the government has to retry the defendant, *see Edwards v. Vannoy*, 593 U.S. 255, 263–64 (2021).

Conversely, faded memories of witnesses, loss of other evidence, or the empathetic concerns we have for testifying victims are not issues that readily arise in resentencing proceedings. In fact, in the sentencing context, the passage of time potentially gives the district courts more information about the defendant—by, for example, providing evidence of their rehabilitation (or lack thereof).[3] And

---

[2] In a different context, the Supreme Court has expressly noted that finality in sentencing does not bear the same weight as it does when guilt or innocence is at stake. *See United States v. DiFrancesco*, 449 U.S. 117, 133 (1980) ([T]he pronouncement of sentence has never carried the finality that attaches to an acquittal.")

[3] *See*, the basis of the panel decision in this case.

although the district court is required by § 3553(a) to account for the harm to any victims, it can often do so without the victims being present, so there is less risk that *de novo* resentencing will subject victims to additional emotional trauma.

Finality has also been invoked by the Supreme Court to maintain public "confidence in the integrity of [judicial] procedures," *see United States v. Addonizio*, 442 U.S. 178, 184 n.11 (1979), and to avert "delay" that could otherwise "impair the orderly administration of justice," *Custis v. United States*, 511 U.S. 485, 497 (1994).

But, these justifications, too, are of significantly reduced force in the sentencing context. We do not understand how insisting on the finality of a sentence that was potentially based in part upon an illegal conviction could possibly instill confidence in the courts. Indeed, we can think of few greater frustrations to the public's faith in a criminal justice system than the inability to remedy judicial decrees that may improperly restrain an individual's liberty.

Additionally, both Congress and the United States Sentencing Commission (the "Sentencing Commission") have recently made clear that resentencing can be appropriate, even many years later, thereby casting doubt on the importance of finality in the sentencing context generally.

In 2018, Congress passed the First Step Act, applying the Fair Sentencing Act of 2010's correction in the disparity of crack and powder cocaine retroactively. *See* Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. This permitted prisoners sentenced before 2010 – under the outdated crack cocaine sentencing framework – to petition a court for reconsideration. From December 2018 to January 2020, 2,471 orders for sentence reductions were completed.[4]

In November 2023, the Sentencing Commission adopted Amendment 821: an amendment to the criminal history provisions found in Chapter 4 of the *Guidelines Manual*. *See* U.S. Sent'g Guidelines Manual § 4A1.1, 4C1.1 (U.S. Sent'g Comm'n 2023). Amendment 821 includes two key modifications. In Part A of the Amendment, the Sentencing Commission reduced their "Status Points" calculation, decreasing them by one point if an individual has seven or more criminal history points, and eliminating Status Points entirely for those with six or fewer points.[5] In Part B, the Sentencing Commission created a new guideline

---

[4] U.S. Dep't of Just., Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act.

[5] U.S. Sent'g Comm'n, Amendment 821, https://www.ussc.gov/guidelines/amendment/821.

entirely, providing for a decrease of two offense levels for those whose offense did not include specific aggravating factors.[6] The Sentencing Commission voted to allow delayed retroactive application of Amendment 821 starting February 1, 2024, enabling those currently incarcerated to reduce their current sentence accordingly by petitioning the court.[7] The Sentencing Commission estimates that over 18,000 incarcerated individuals will be eligible for a lower sentencing range through either Part A or Part B.[8]

Additionally, I note that given the statutory limits on the timing and number of § 2255 petitions, let alone the obstacles to successful ones, a requirement of plenary resentencing upon vacatur of one of multiple convictions will simply not be that burdensome. As such, the interest in finality can not be enough to

---

[6] *Id.*

[7] U.S. Sent'g Comm'n, U.S. Sentencing Commission Votes to Allow Retroactive Sentence Reductions and Announces its Next Set of Policy Priorities (Aug. 24, 2023), https://www.ussc.gov/about/news/press-releases/august-24-2023.

[8] U.S. Sent'g Comm'n, Analysis of the Impact of 2023 Criminal History Amendments (Parts A and B) if Made Retroactive (May 15, 2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/retroactivity-analyses/2023-criminal-history-amendment/202305-Crim-Hist-Amdt-Retro.pdf (estimating that 11,495 incarcerated individuals would be eligible under Part A and 7,272 individuals under Part B).

overcome defendants' interest in not being sentenced, even in part, for crimes they did not commit.

Finally, it is significant that the grounds on which the panel is requiring full resentencing in this case – a different judge and possible rehabilitation – are both more likely to be present in habeas cases than in direct appeal cases (due to the usually significant time gap from the affirmance of a sentence and a successful habeas petition). Again, both considerations directly undercut interests in finality.[9]

## III.

I recognize that our strict *de novo* resentencing rule is far from universally adopted by our sister circuits; significantly, various circuits do not adopt a bright-line rule for when resentencing must occur. They permit corrections rather than resentencing in a fair number of cases on direct appeals. Critically, these circuits usually do the same in habeas cases. Our circuit precedents foreclose corrections

---

[9] Moreover, as we noted in the panel opinion, the government's purported interest in finality has been, at best, inconsistent. When given an opportunity to increase a sentence, the government has argued for a full resentencing, but in the instant case, where resentencing could plausibly be lowered, the government maintains that finality should foreclose this appeal. The government has not explained this asymmetry.

unless the resentencing would be purely ministerial, and I would hold that the same rule applies to habeas cases.

In other words, while there is variation in how each circuit handles resentencing discretion, the circuits trend towards the *same* rules applying to habeas and direct appeals cases. The difference between us and our sister circuits mostly stems from generally divergent views as to when full resentencing, rather than sentence correction, is required; it need not reflect a broader difference in how we treat direct appeals as compared to habeas proceedings.[10]

---

[10] *See* the Eleventh Circuit has adopted a "sentencing package" framework in habeas *and* direct appeal cases. After the vacatur of a conviction "the district court has the authority to recalculate and reconsider [the defendant's] sentence for it to comport with the district court's original intentions at sentencing…That is as true when the unbundling occurs in a § 2255 proceeding as it is when it happens on direct appeal. *United States v. Fowler*, 749 F.3d 1010, 1017 (11th Cir. 2014). (internal quotation marks and citation omitted)

The Ninth Circuit in habeas cases holds the "decision to restructure a defendant's entire sentence when only one of the counts of conviction is found to be invalid is discretionary" even if the sentences are grouped for sentencing purposes. *Troiano v. United States*, 918 F.3d 1082, 1086–87 (9th Cir. 2019). This mirrors the same discretion following a direct appeal. *United States v. Evans-Martinez*, 611 F.3d 635, 645 (9th Cir. 2010).

The Third Circuit has also adopted a "sentencing package" doctrine. The sentencing package doctrine applies when a vacated count was interdependent with the preserved counts of conviction, "result[ing] in an aggregate sentence, not sentences which may be treated discretely." *United States v. Miller*, 594 F.3d 172, 180 (3d Cir. 2010). Originally the Third Circuit had complete symmetry between habeas and direct appeal when, following vacatur, a district court was entitled, but not required, to resentence de novo. *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997). The Third Circuit has since revised its position and held that when a vacated count is interdependent, "[d]istrict courts *should* resentence de novo." *United States v. Ciavarella*, 716 F.3d 705, 734 (3d Cir. 2013) (emphasis added). While the Third Circuit has not affirmatively

Thus, while *Peña* agreed with the government "that every circuit to analyze this issue has held that *de novo* resentencing is not required in this context[,]" this is not contrary to my position 58 F.4th 613, 619. Again, *Peña* referred to a strictly ministerial resentencing, so even under our strict, categorical rule *de novo* resentencing was not required, and correspondingly under any of our sister circuit's abuse of discretion standards a full resentencing would certainly not be

restated that the symmetry originally detailed in *Davis* remains good law, they have implicitly affirmed it through the denial of a certificate of appealability following a successful habeas petition "the District Court acted within its discretion when it declined to conduct a de novo resentencing…[T]he vacated counts of conviction are not 'interdependent' with the remaining counts, as that term is used in our sentencing-package-doctrine case law. *United States v. Ciavarella*, No. 20-2862, 2021 WL 7501284, at *1 (3d Cir. Oct. 14, 2021). *Davis* was further affirmed in a recent concurrence: "[The sentencing package doctrine] applies both when a conviction is vacated on appeal and when a conviction is vacated by a district court on collateral review." *United States v. Grant*, 9 F.4th 186, 213 (3d Cir. 2021) (Ambro, J., concurring).

Conversely, the Sixth Circuit has established a distinction between their direct appeal and habeas approach. In habeas, *de novo* resentencing is not required following every successful § 2255 petition, as "not every multi-count judgment presents a sentencing package in which vacating the sentence on *one* count unravels the remaining sentences." *United States v. Augustin*, 16 F.4th 227, 323 (6th Cir. 2021) (internal quotation marks omitted) (emphasis added). This is distinct from the Sixth Circuit's approach in direct appeal cases, where unless the court specifically outlines that their remand is limited following vacatur, the district court "requires the district court to conduct resentencing de novo." *United States v. Garcia-Robles*, 640 F.3d 159, 166 (6th Cir. 2011).

A primary reason for the Sixth Circuit's position, however, is an argument I have already dismissed: Because § 2255 enumerates both correcting and resentencing as options, the Sixth Circuit reasoned that this grants district courts "broad discretion" in choosing between them *Augustin*, 16 F.4th at 232. But as addressed earlier, the statutory granting of authority provides no insight into *when* that authority can be properly exercised.

required. Though our sister circuits may provide greater discretion than we do even by our holding today, this discretion in the habeas context is simply an extension of their respective direct appeal rule. Thus any discretion identified by *Peña* is a mirroring of direct appeal case law, and we should similarly adopt this trend endorsed by our sister circuits of treating habeas petitioners no differently than their direct appeal counterparts in resentencing proceedings.

Accordingly, I would take our precedents to their logical conclusion and hold that, when any count in  a multi-count conviction is vacated on a § 2255 petition – just as when any count in a multi-count conviction is vacated on direct appeal – the district court may exercise its discretion to forgo *de novo* resentencing and simply "correct" the original sentence only when the resentencing is "strictly ministerial," meaning that the defendant is already serving the lowest sentence for each of his or her *remaining* convictions that is allowed by law. When that is so, the district court can say with complete certainty that the unlawful conviction did not inflate the overall sentence term for the remaining convictions. But when, as here, the defendant has *not* received the lowest possible sentence for each of his remaining convictions, the district court *cannot* be sure that the resulting sentence

has not been inflated by the reversed conviction, and it therefore risks violating the defendant's rights.

## IV.

I recognize that the approach of district courts and *Peña* to establish a distinction between habeas and direct appeals stems probably from a distaste of our traditional strict, *de novo* resentencing rule. I thus briefly consider the advantage of moving away from our full resentencing rule.

District courts may reasonably argue that the time demands of our rule in our direct appeal case law are considerable, and that attempts to circumvent this requirement in habeas cases can provide relief to their docket. But this judicial economy rationale may be short-sighted. Our clear, bright-line rule ensures that while there may be more upfront temporal demands as district courts navigate a resentencing, these demands pair with a corresponding, and significant, time-saving benefit: the avoidance of appeals alleging that a district judge has inappropriately applied discretion. In other words, the implementation of a broad abuse of discretion standard may lead to even greater demands on the entire circuit and cause greater uncertainty for both judges and habeas petitioners.

I would also flag that before district courts determine whether a resentencing is appropriate under a broad abuse of discretion standard, they are likely to reengage with the facts, consult their notes from the original sentencing, familiarize themselves with the petitioner's record while incarcerated, and perhaps review circuit holdings as to whether they would be inevitably required to conduct a *de novo* resentencing. All of this is time consuming. Thus, the minimal, if any, time-saving rationale of a discretionary approach may well be less convincing than the efficiency of our current *de novo* rule.

In any event, while some may be perhaps, understandably, unhappy with our current resentencing approach, attempts to create asymmetry in its application between habeas and direct appeal is not the appropriate forum to express this discontent. We have tools that we can use to express our dissatisfaction. If there is sufficient concern – and there may well be – we can overturn our precedent through an *en banc*, or perhaps by broadening the meaning of what is purely ministerial.[11] But undercutting our rule by treating habeas petitioners differently

---

[11] Our summary order in *Ayyad*, in effect, did slightly expand our circuit's understanding of purely ministerial. The court reasoned that a *de novo* resentencing was unnecessary because any proceedings would, in principle, be "entirely academic[:}" given Ayyad's current age and

14

is not be the appropriate approach. If this issue is worth facing – let us do it directly!

## CONCLUSION

I would therefore hold that when a count of conviction falls, and when the application of the preexisting sentence on the unreversed counts is not ministerial, it is an abuse of discretion not to conduct *de novo* resentencing, and that this applies regardless of whether the conviction fell as a result of a habeas or a direct appeal challenge. [12]

---

remaining mandatory consecutive sentences, "resentencing would not realistically lead to a sentence short enough for Ayyad to be released within his lifetime." *United States v. Ayyad*, No. 20-3832, 2023 WL 1975682, at *1 (2d Cir. Feb. 14, 2023).

[12] The opinion concurring in the result makes many interesting, and perhaps valid, points about the desirability of giving district court broad discretion to decide whether to resentence or to correct when a single count of a multicount conviction is vacated following a successful habeas petition. Every one of those points, however, applies equally when a single count of a multicount conviction is reversed on direct appeal. And our court's precedent, for better or for worse, is that on direct appeal a sentence may be corrected only when a new sentence would be strictly ministerial. *Rigas*, 583 F.3d at 118.

The concurring opinion hardly considers whether and why a different rule should apply when the sentence is challenged through a habeas petition. The only distinction the concurrence advances is not convincing. The concurrence suggests that the discretion offered to the district court and to us is different in habeas and direct appeal cases. But that is not so. In each instance, the district court has discretion (whether inherent as in direct appeal cases or detailed by a statute as in habeas cases) as to correct or resentence. And in each instance the court of appeals rules as to what is the proper scope of that discretion. Our circuit has, in direct appeal cases, limited that discretion strictly. Other circuits have not. But the job district courts do, and the review courts of appeals then apply, is the same regardless of whether the cases arise on habeas or on direct appeal

15

---

Incidentally, were we to rule on the grounds on which the concurring opinion is based, the remand would, I believe, permit the district court simply to correct the sentence rather than to go through a new and complete sentencing. And the concurring opinion's footnote to the contrary does not change my view on this minor, but interesting, point.

GERARD E. LYNCH, *Circuit Judge,* concurring in the judgment:

I agree with my colleagues that this case must be remanded for a full resentencing proceeding. But I cannot join in the majority opinion, because I believe that it subtly but significantly constrains the proper scope of discretion available to a district court when one count of a multi-count conviction is vacated on an application pursuant to 28 U.S.C. § 2255; conflates the substantive and procedural rules governing that situation; and accuses the district judge in this case of making an error that he did not in fact commit.

## I.     The Substantive Issue: Did the District Court Abuse Its Discretion by Declining to Resentence Kaziu?

In this case, the district court determined, on collateral review pursuant to § 2255, that Supreme Court decisions handed down after Kaziu's conviction had invalidated one of the four counts for which he had been convicted and sentenced. In that situation, § 2255 expressly offers the district court a choice of four potential remedies. A court that finds a conviction invalid *must* "vacate and set . . . aside" the erroneous judgment, but then *may choose* whether to "[1] discharge the prisoner or [2] resentence him or [3] grant a new trial or [4] correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The first and third options are not relevant here: The error infecting the judgment left Kaziu validly

convicted and sentenced on three serious charges, so he could not simply be discharged; that option would be appropriate only if the error had infected every count of conviction. And the error warranting relief did not involve the fairness of the trial, so there was no reason to order a retrial.

The district court was thus left with two options: to "resentence" the petitioner or merely to "correct the sentence." Section 2255(b) confides the choice between those remedies to the sound discretion of the district court.

The two options are substantively different. Since Kaziu was convicted and sentenced on four different charges, only one of which has now become invalid, his sentence could be "correct[ed]" simply by vacating the conviction and sentence on the invalid count, leaving the sentences imposed on the three remaining counts intact. It is easy to imagine cases where such a limited "correct[ion]" would be the obvious decision. Suppose, for example, a case where the defendant had been convicted of two distinct crimes, committed on different occasions, and of manifestly different degrees of seriousness, and had been sentenced to five years in prison on the more serious charge, and two years on the less serious charge, to be served consecutively. If the conviction on the less serious count were found invalid on collateral review, the district court might

2

well find it entirely appropriate simply to vacate the conviction and sentence on the invalid count, and to leave the sentence on the more serious charge intact. The petitioner's total sentence would thus stand "correct[ed]."

However, multi-count convictions often lead to sentences that are interrelated in complicated ways. The United States Sentencing Guidelines, for example, expressly encourage sentencing judges to arrive at a single, comprehensive sentence that punishes a defendant for the totality of his crimes, and then to impose sentences on separate counts consecutively or concurrently as necessary to arrive at that total overall sentence. *See* U.S.S.G. § 5G1.2. Moreover, the law permits a sentencing judge who must impose a mandatory consecutive sentence on one count to reduce the otherwise appropriate sentence on a related count, in order to arrive at a just cumulative sentence. *See Dean v. United States*, 581 U.S. 62, 71 (2017) ("Nothing . . . prevents a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense."). In such circumstances, removing one brick from the sentencing structure by vacating a single count could bring the entire carefully constructed sentence toppling down, resulting in a sentence that would never have been imposed if the now-invalid count had not been charged in the first

3

place. Confronted with such a case, the district court might logically decide to "resentence" the petitioner – which would entail imposing an entirely new sentence for all of the counts of conviction, including those that were not directly affected by the error that required vacatur of the now-invalid count of conviction.

There are many variations on these themes, and a variety of reasons that might affect the desirability of selecting one option or the other. As the majority opinion agrees, the choice is to be made in the first instance, as a matter of discretion, by the district court. Majority Op., *ante*, at 15. That discretion is not unbounded; the option chosen by the district court may be reviewed by a court of appeals, under the familiar "abuse of discretion" standard. But that review will be limited, because an "abuse" of discretion occurs only when the district court has "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *United States v. Rigas*, 583 F.3d 108, 114 (2d Cir. 2009) (internal quotation marks omitted). Generally speaking, we will and should grant considerable deference to the wisdom and experience of district judges, who are far more familiar with sentencing options and considerations than appellate judges. *See United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008)

("[O]nce we are sure that the sentence resulted from the reasoned exercise of discretion, we must defer heavily to the expertise of district judges.")

In this case, my colleagues hold that the very experienced district judge in this case erred – indeed, abused his discretion – by failing to "resentence" Kaziu on his remaining counts of conviction after the vacatur of a single count of conviction. To reach that conclusion, the majority relies on two facts: (1) Judge Block was not the original sentencing judge, but rather had inherited the case from another judge who had retired from the bench, and (2) Kaziu had a "plausible" claim that he was a changed man from the one who had initially faced sentencing. Majority Op., *ante*, at 17–22. In effect, the majority imposes a rule that full resentencing will be *required* whenever these two factors are present.

I disagree, on two counts. First, as a matter of law, I find no basis in the statute for restricting in this manner the discretion of the court that has granted collateral relief. Second, as a matter of fact, it is apparent from the record that the district court did not simply "correct" Kaziu's sentence by vacating the invalid sentence on the firearm charge, but rather resentenced Kaziu by lowering his sentence on counts not substantively infected by any legal error.

A.  *Would It Be an Abuse of Discretion to Merely "Correct" a Sentence on this Record?*

The majority concludes that Judge Block was *required* to "resentence" Kaziu, because (1) Judge Block was not the original sentencing judge, and (2) Kaziu presented credible evidence that he had rehabilitated himself during the time that he had already spent in prison. But there is no legal basis for the imposition of such a rule.

Certainly, nothing in the text of § 2255 cabins the district court's discretion to adopt one or another of the remedies it provides, or so much as alludes either to the identity of the judge or to whether the petitioner's circumstances have changed. Nor is there any logical reason to impose such a rule. It is not even clear that those factors are particularly *relevant* to the judge's exercise of discretion, and it is manifestly clear that they should not be considered *controlling* factors.

First, as to the identity of the judge. Recall that a common scenario in which resentencing is potentially a logical remedy is one where the original cumulative sentence may have been structured in such a way that the vacatur of a single count while leaving the remaining sentences unaltered would undermine the purposes of the original, carefully constructed, sentence. Where there is some

6

ambiguity about the purposes of the original sentence, the judge who imposed that sentence in the first place may well be especially well placed to tell us whether the sentences on any remaining counts were imposed because they were appropriate sentences for those counts entirely independent of the now-vacated count, or whether the sentences on those counts were influenced by the now-vacated count. So an appellate court, when reviewing a habeas judge's election not to resentence a successful habeas petitioner on his remaining counts of conviction, *might*, in some cases, find the identity of the original sentencing judge to be a relevant factor.

But that observation hardly justifies a rule that a successor judge is *barred* from concluding that a simple deletion of the invalidated sentence would be the appropriate remedy. There are many circumstances in which any judge familiar with sentencing practice would quickly recognize that a complex set of sentences on interrelated counts was integrated in a way that no longer makes sense once a particular count is undermined – or, alternatively, that the sentences on two distinct counts do not present that problem. For example, suppose the sentencing judge had stated on the record that it considered the mandatory consecutive sentence required for bringing a firearm to a drug deal under 18 U.S.C. § 924(c) to

7

be so severe that the court was significantly reducing the sentence it would otherwise have imposed on the underlying distribution of narcotics charge alone, in order to arrive at an overall fair sentence. In such a case, the interrelation between the sentences would be obvious to any reader of the transcript. Accordingly, the later invalidation of the § 924(c) count alone, without a full resentencing on the other, still valid counts, would undermine the goals of the original sentence. Even if the sentencing judge had not said so, if the sentence on the drug charge was unusually low, for no apparent reason other than the need to impose a mandatory consecutive sentence on the firearm charge, then the judge on habeas review might easily infer that the mandatory consecutive sentence affected the sentence imposed on the predicate drug charge.

Conversely, if the original sentence had imposed consecutive and independently reasonable sentences on a more serious and a less serious charge, based on two unrelated crimes, it may well be quite reasonable for a judge who inherited the case to conclude that the subsequent invalidation of the less serious charge would leave the reasoning behind the more serious sentence for the other crime intact, such that striking the second, consecutive sentence without further relief would adequately remedy the error. In either situation, both the newly-

8

assigned judge and the reviewing court would be as well placed as the original sentencing judge to evaluate which remedy is appropriate under § 2255.

This very case perfectly illustrates the point. Kaziu was sentenced to *concurrent* 27-year sentences on the now-vacated firearms charge under 18 U.S.C. § 924(o) and on the lead charge of conspiracy to commit murder in a foreign country under 18 U.S.C. § 956 (as well as to concurrent 15-year sentences on two charges involving material support to terrorists under 18 U.S.C. §§ 2339A and 2339B). The sentence on the vacated invalid charge therefore did not add a day to Kaziu's prison sentence. That sentencing choice is understandable, given that his handling of firearms was but one component of the larger course of conduct encompassed by the lead count. On habeas review, Kaziu's § 924(o) conviction must be vacated because a conspiracy to commit murder can theoretically be committed without the use, attempted use, or threatened use of force and therefore cannot serve as a predicate crime of violence. *United States v. Martinez*, 991 F.3d 347, 354 (2d Cir. 2021) ("[C]onspiracy offenses are not *categorically* violent crimes."). However, the *fact* that Kaziu had possessed and trained with firearms in the course of the conspiracy to murder would have been relevant to the original sentence to be imposed on the conspiracy to murder count, whether

9

or not that possession was charged as a separate crime. The original court's decision to structure the sentences so that the separate firearms charge added nothing to the punishment on the conspiracy to murder count makes sense only if the aggravating factor of weapons use had already been accounted for in the sentence on the latter count. Nothing about the structure of the sentences suggests that the existence of a free-standing firearms count (as opposed to the behavior underlying that count) had any impact on the length of the sentence on the lead count.

Moreover, if we (or the judge adjudicating the § 2255 petition) needed further insight into the intentions of the sentencing judge in this case, we would not have far to look. The original judge on the case, the Honorable John Gleeson (a particularly thoughtful sentencer who was later appointed to the United States Sentencing Commission), carefully detailed the reasoning underlying his sentencing decision at the time of its imposition. Judge Gleeson stated that "there [i]s good reason to believe [that Kaziu was] ready and willing and able to kill in the name of jihad, and, indeed, that [he] had decided to do just that." Sentencing Transcript at 22, *United States v. Kaziu*, No. 09-cr-660 (E.D.N.Y. Mar. 2, 2012), Dkt. 266. The judge doubted Kaziu's expression of regret, which he characterized as

10

"opportunistic," telling Kaziu that "[i]f you walked out the door right now, I have no reason to doubt . . . that you'd try to pick up where you left off, maybe succeed this time." *Id*. at 29. Judge Gleeson made no reference whatsoever to a separate conviction on the firearms count as a factor bearing on the total sentence, and instead focused on the overall seriousness of Kaziu's course of criminal conduct and the need to incapacitate an "unrepentant" jihadist. *Id*. There is no reason at all to believe that the judge's assessment of Kaziu and his crimes, and of the term of imprisonment that was "sufficient, but not greater than necessary," to accomplish the purposes of sentencing, 18 U.S.C. § 3553(a), would have been any different had the prosecutor not included the now-vacated firearms charge as a separate count of the indictment. In short, it does not make sense to hold that a decision not to conduct a global resentencing might have been within Judge Gleeson's discretion had he remained on the bench, but is an abuse of discretion, on the same facts, when made by Judge Block, to whom the case was later reassigned.

Second, as to the defendant's evidence of rehabilitation, such evidence arguably should bear no weight in the decision of whether to resentence the defendant on charges that were unaffected by the error that invalidated a single,

11

severable count. That is because current law (perhaps unwisely) strongly disfavors revisiting sentences based on changes in a defendant's circumstances subsequent to the imposition of the original sentence.

Prior to the Sentencing Reform Act of 1984, Rule 35 of the Federal Rules of Criminal Procedure authorized sentenced prisoners to seek by motion, and federal district courts to grant, a new sentence, in the interests of justice. That provision imposed a considerable burden on district courts, who were frequently faced with repeated requests by prisoners serving long sentences to reduce their sentences in light of new circumstances, including claims that the prisoner had seen the error of his ways and worked successfully to rehabilitate himself. But that burden was deemed worth the effort, to encourage and reward the positive changes that we hope that punishment can produce in offenders. In a sentencing system that was largely predicated on the goal of rehabilitation – a "correctional" rather than "penal" system – the original sentence was deemed a prediction of what term would be necessary to rehabilitate an offender, and both the institution of parole and the availability of Rule 35 motions provided means to determine whether the prediction had led to a longer term of imprisonment than in the end had proved necessary.

12

But Congress changed that system radically in 1984, and created a sentencing regime that was based more strongly on "just deserts" and deterrence, factors that turn more on the nature of the crime committed than on the personal characteristics of the offender or the goal of rehabilitation, and that sought equivalent treatment of similar crimes based on a system of sentencing guidelines. As part of that reform, Congress abolished parole and restricted Rule 35 motions for sentence reduction to a narrow set of cases involving productive post-sentencing cooperation with the authorities. Those changes sharply limited the power of a judge (whether the original sentencing judge or another who later inherited responsibility for the case) to revisit the sentence at a later date due to claimed rehabilitation.

Subsequent developments have reopened some avenues for reconsideration. *See United States v. Brooker*, 976 F.3d 228, 231–37 (2d Cir. 2020) (describing and interpreting the changes to compassionate release provisions codified by The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194); 18 U.S.C. § 3582(c)(2) (permitting a prisoner to seek a (discretionary) sentence reduction where the original sentence was based on a guideline recommendation that was subsequently lowered by the Sentencing Commission). I welcome those changes.

Indeed, thoughtful commentators have suggested that the opportunities for such relief should be even wider. *See, e.g.*, MODEL PENAL CODE: SENTENCING, Appendix A § 11.02 (AM. LAW INST., 2023) (recommending that legislatures authorize "second looks" at sentences for prisoners who have served fifteen years of a longer sentence). It is reasonable to think that long years in prison will change a person; few of us are exactly the same person at age 40 that we were at 25, simply through the passage of time and accumulation of experience, even without the dubious "benefit" of imprisonment.

But that is not the system we have. The opportunities for a "second look" at sentences remain carefully circumscribed. As we have recently noted, even the expanded power of district courts to grant sentence reductions for "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(i), which permits courts to consider a wide range of factors that might in particular cases meet that standard, *Brooker*, 976 F.3d at 237, *excepts* "rehabilitation alone" as a ground for compassionate reduction. *United States v. Fernandez*, --- F.4th ---, 2024 WL 2926825, at *6 (2d Cir. June 11, 2024), citing 28 U.S.C. § 994(t) (authorizing the Sentencing Commission to "promulgat[e] general policy statements . . . describ[ing] what should be considered extraordinary and compelling reasons for

14

sentence reduction," but providing that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason").

In any event, the various policy reasons that support constructing a *system* that permits a "second look" at long sentences based on claims of rehabilitation do not persuasively support requiring (or perhaps even permitting) courts to consider such claims of rehabilitation in deciding whether or not to reopen a sentence *after one count of a multi-count sentence has been vacated on legal grounds.* Put another way, we have certain mechanisms that, under more or less exceptional circumstances, permit the courts to revisit and reduce a sentence that may have seemed appropriate at one time but that, due to changed circumstances, may no longer seem necessary. But it is not clear to me that the vacatur of one of many counts of conviction, based on some legal error infecting that count alone, should trigger a revisitation of the original sentence that would not be available apart from the presence of that legal error, which often has no logical connection to the sentence to be imposed. It is even less clear that evidence of rehabilitation should *require* (at least for judges who were not the original sentencer?) reconsideration of the sentences imposed on the unaffected counts. It seems arbitrary to mandate that a defendant should obtain a "second

15

look" resentencing based on evidence of rehabilitation simply because the prosecutor fortuitously charged an invalid count, when the same prisoner, offering the same evidence of rehabilitation and serving the same sentence on the unaffected counts of conviction, would be barred from such reconsideration had the prosecutor foreseen the legal problem with the invalidated count and not charged it in the first place. And that is so whether the evidence of rehabilitation is presented to the original judge, or to a judge who has inherited the case but who can see that the *original* sentences on the remaining counts did not turn on the additional sentence for the now invalid count, which can be corrected by simply excising its sentence.

Evidence of rehabilitation is not mentioned in § 2255. Moreover, it is not particularly relevant to the concerns of that statute, as § 2255 deals with the consequences of legal error infecting a conviction on a particular charge, and not with providing opportunities for evaluating whether a sentence that was once appropriate is now less reasonable in light of a prisoner's changed circumstances. Indeed, we have strictly enforced the separation between the mechanisms for compassionate modification of sentences and the § 2255 remedy for correcting erroneous convictions. *See, e.g.*, *United States v. Amato*, 48 F.4th 61, 66 (2d Cir.

16

2022) (rejecting effort to channel issues properly raised under § 2255 into application for sentence reduction under § 3582).

I don't mean to contend that the existence of changed circumstances should have no bearing on the exercise of the *discretion* offered by § 2255 to revisit the entire sentence. That question would be presented only in a case in which the government appealed a district court's decision to engage in resentencing after considering such evidence. For present purposes, it is enough to point out that reasonable jurists could take that position, based on the arguments presented above. All that is necessary to evaluate the rule propounded by the majority today is to note that there is no basis for, and a strong argument against, the proposition that evidence of rehabilitation precludes a district court from exercising its discretion *not* to resentence. Whether the defendant's rehabilitation must (or even may) be considered when a court exercises its discretion between resentencing on all counts and simply correcting the sentence on the invalid count, let alone whether that factor should be a controlling consideration that presumptively requires a particular result, seems to me a difficult question, of the sort that we should not reach out to decide unless that question is squarely presented by the case before us.

And this is not such a case, for reasons to which I now turn.

B.  *Did Judge Block "Correct" Kaziu's Sentence, or Did He "Resentence" Him?*

In this case, Judge Block cannot be faulted for choosing the wrong remedy by failing to "resentence" Kaziu. The district court here did not merely "correct" the sentence to eliminate the punishment attached to the invalid count; rather, it did in fact resentence Kaziu on the remaining counts that were unaffected by the legal error that led to the vacatur of that invalid count. The district judge understood himself to be resentencing Kaziu; he actually did so by *reducing* the sentences originally imposed on the unaffected counts; and he reduced those sentences *because of the changed circumstances* that the majority argues mandate resentencing.

Let's be very clear about this. First: The district court expressly stated that it was resentencing Kaziu, and that in doing so it was taking into account the evidence of his rehabilitation. *See United States v. Kaziu*, No. 09-cr-660, 2021 WL 1751156, at *2 (E.D.N.Y. May 4, 2021) ("The Court has chosen to proceed with *re-sentencing* based on the parties' detailed written submissions.") (emphasis added). The court did not reduce the sentence as much as Kaziu wished,

18

explaining that the seriousness of his crimes continued to warrant a substantial sentence. But it nevertheless took into account Kaziu's claimed rehabilitation, exercising the responsibility of sentencing judges to balance the varying goals of sentencing, which include respecting the seriousness of the offense as well as assessing the (original or changed) personal characteristics of the offender. *See* 18 U.S.C § 3553(a). In assessing what the district court did, it is at least relevant to consider what the court *said* it was doing, and the district court here was clear that it had chosen to "resentence."

Second: We need not, and in some cases perhaps should not, take the court at its word. Perhaps what the court characterized as a resentencing was really just a correction of the sentence. The substance of what the court did is what matters, even if the court inaccurately characterized its choice. But that is not so here. As a substantive matter, and entirely apart from what Judge Block *said* he was doing, his action cannot be characterized as a mere "correction" of Kaziu's sentence. The judge did not do the minimum necessary to ensure that the judgment no longer punished Kaziu for a crime of which he has now been found to have been improperly convicted. Rather, the judge *revisited* – and reduced – the sentences imposed on the other, unaffected counts. That is the hallmark of a *resentencing*.

19

There is, indeed, nothing else one could call it. Kaziu used to be sentenced to twenty-seven years on those counts, and now he has been sentenced instead to serve two fewer years. That change was not the result of any legal error in the original sentences on those counts, but was based on circumstances (his rehabilitative efforts while in prison) that did not exist at the time of the original sentence. His sentence was not merely *corrected* by excising the erroneous conviction and sentence. He was, unquestionably, *resentenced* for crimes of which he remains validly convicted. Indeed, Kaziu's own submissions to this Court consistently describe the district court's action as a resentencing. *See* Appellant's Br. at 12 ("The Court should vacate Mr. Kaziu's *resentence.*") (emphasis added); *id.* at 33 (arguing that "the resentence is procedurally and substantively unreasonable").

Third: To the extent that the majority believes that Kaziu was not "resentenced" because the district court did not conduct a *proper* resentencing (because, as discussed below, the court failed to hold an in-person hearing), any such belief confuses substance with procedure. Assume that a judge, following a guilty plea or trial verdict of guilt, simply directed the entry of a judgment purporting to sentence the defendant to a term of incarceration without following

20

the sentencing procedures set out in Rule 32 of the Federal Rules of Criminal Procedure. That would be error, and the defendant would have a valid basis for appeal. But it would not be accurate to say that the judge failed to sentence the defendant. The sentence may have been invalid or improper. But the judge undertook to and did impose a sentence, and – until and unless the judgment was invalidated on appeal – that judgment would authorize the defendant's imprisonment. The substance of the action is what dictates the procedure that must be followed; the procedure that was followed does not dictate how we characterize the substance of the action. The same is true here: the substantive choice made by the district court can be characterized only as a resentencing. Whether the court erred in *how it executed* that choice is a different, procedural, question, that I consider below.

In short, the district court here cannot be accused of abusing its discretion by declining to resentence Kaziu. It *did* resentence him. We have no occasion to decide here whether it *would have been* an abuse of discretion for the court to have selected another remedy made available by § 2255 (the question the majority opinion, and Part I.A of this opinion, addresses) because the district court selected the very remedy that the majority believes he was required to select. Nor

is there any need to decide whether it was appropriate, let alone required, for the judge to consider Kaziu's claimed rehabilitation in deciding whether to resentence him: the government does not argue that the court should not have considered that factor, and Kaziu does not argue that the district court did not, but should have, considered it in deciding whether to resentence. (Kaziu's principal argument, rather, is that the district court did not give *enough* weight to that factor.)

But if the district court did resentence Kaziu, how did the judge err, and why do I agree that further proceedings are necessary? The answer lies not in the *substance* of the remedy that the judge chose, but in the *procedure* that is required to effectuate that choice.

II.     **The Procedural Issue: Having Decided to Resentence Kaziu, Did the District Court Err in Failing to Conduct an In-Person Procedure, Including Allowing Kaziu the Right to Address the Court?**

Having elected to resentence Kaziu on all counts of the indictment, the district court was required to follow the procedures attendant on a sentencing. The Federal Rules of Criminal Procedure lay out those procedures. To protect the defendant's rights, Rule 32(i) sets out a number of specific requirements that are akin in many respects to those governing guilty pleas, in that they require the

judge to address the defendant personally and to verify that the defendant is conversant with the nature of the information to be considered at sentencing. Thus, the court must establish that the defendant and the defendant's counsel have reviewed the presentence report and any addenda to that report, Rule 32(i)(1)(A), and advise the defendant and his attorney of any information excluded from the report on which the court will rely in sentencing, Rule 32(i)(1)(B). The court must then rule on any factual disputes about such information or make clear that a ruling is unnecessary because the matter will not be considered or will not affect the sentence. Rule 32(i)(3)(B). Most importantly, before a sentence is imposed, the court must provide defense counsel with an opportunity to *speak* on the defendant's behalf, Rule 32(i)(4)(A)(i), and "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence," Rule 32(i)(4)(A)(ii).

Notably, all of those rights of the defendant and procedural obligations on the Court presuppose that the sentencing takes place in open court, with the defendant personally present. As we have recognized repeatedly, the defendant has a right under the Federal Rules to be present, not only at initial appearances and pleas, Rule 43(a)(1), and at every trial stage, Rule 43(a)(2), but also at

23

sentencing, Rule 43(a)(3). That right to presence may be waived by a defendant, but even in the midst of a pandemic, the right to in-person sentencing is preserved absent the defendant's voluntary and knowing waiver of that right. *United States v. Sealed Defendant One*, 49 F.4th 690, 700 (2d Cir. 2022); *United States v. Leroux,* 36 F.4th 115, 121 (2d Cir. 2022). Even in a public health emergency, a court may not conduct a sentencing solely on papers submitted by the parties absent the defendant's consent, much less over the defendant's objections.

Moreover, we have been equally emphatic that these rules apply to *re*sentencings, such as proceedings on remand after an original sentence has been vacated. *See United States v. Maldonado*, 996 F.2d 598, 599 (2d Cir. 1993) (holding that right to in-person allocution by the defendant applies during resentencing after appeal). The right of allocution, in particular, is so important that the failure to provide that opportunity may be corrected even absent a contemporaneous objection, and so fundamental that it may be the subject of an appeal despite an otherwise valid waiver of the right to appeal. *United States v. Lajeunesse*, 85 F.4th 679, 695 (2d Cir. 2023) (concluding that appellate waiver in plea agreement did not preclude appeal of a sentencing that omitted allocution, and remanding for resentencing despite defendant's failure to object).

24

Those rights are attendant on the conduct of a sentencing or resentencing. Once the substantive decision to engage in resentencing is made, the procedural obligations attendant on that decision must be followed. In other words, contrary to the reasoning of the majority, a district court that imposes a sentence, or that resentences a defendant, errs *procedurally* by failing to comply with the specified procedural rules. A judge that fails to comply with those rules has erred, but has erred precisely because he *did* sentence or resentence the defendant without complying, and not because he has done something other than sentence or resentence the offender.

Moreover, once the decision to resentence is made, there is no dispute that the district court must impose the new sentence based on the law and the facts as they exist at the time of resentencing, applying the § 3553(a) factors, including the history and characteristics of the offender, anew. *See United States v. Weingarten*, 713 F.3d 704, 711–12 (2d Cir. 2013); *see also United States v. Flack*, 941 F.3d 238, 241–42 (6th Cir. 2019) ("[T]he district court here—to its credit—chose to apply the § 3553(a) factors anew [when it imposed the original sentence upon the remaining counts of conviction after vacatur of another count pursuant to a § 2255 petition], which meant that its action was a resentencing and that the court

was required to hold a sentencing hearing."). That principle unquestionably permits the district court to consider evidence that the petitioner is no longer the same person who was before the court at the time of the initial sentencing.

That, in short, is the error that the district court committed in this case. Its error lay not in selecting a remedy *other than* resentencing in a case in which it was an abuse of discretion to select some other remedy. Rather, the court erred in failing to comply with the procedural requirements for sentencing (or resentencing) a defendant after having selected the remedy of resentencing – the very remedy that the majority unnecessarily insists was required, and the propriety of which has not been challenged by either Kaziu or the government.

It should be noted those procedures are *not* required in order to *correct* or modify a sentence. Had the district court chosen to correct the sentence by vacating the sentence imposed on the invalid count, no precedent of which I am aware would require personal presence or allocution by the defendant before that remedy was executed. Similarly, Rule 35(a) continues to permit the court, within 14 days after sentencing, to "correct" a sentence that results from "arithmetical, technical, or other clear error," and Rule 36 permits the court at any time to correct a clerical error in the judgment or record, with only the minimal

procedural requirement of "giving any notice it considers appropriate." And sentence reductions or modifications under the First Step Act (and related forms of relief) are not considered plenary resentencings, and do not require compliance with the procedural rules attendant on sentencings. *See United States v. Moyhernandez*, 5 F.4th 195, 198 (2d Cir. 2021), vacated on other grounds by *Concepcion v. United States*, 597 U.S. 481 (2022); *United States v. Moore*, 975 F.3d 84, 92 (2d Cir. 2020) (holding that "the First Step Act does not entail a plenary resentencing, and . . . does not obligate a district court to recalculate an eligible defendant's Guidelines range"). But the proper course is to decide *what* kind of remedy is being required, and only then to address what procedures are necessary in order to accomplish that remedy.

One further note. Kaziu sought, and received, the remedy of resentencing. The government argued in the district court that resentencing was not required. And while the government continues on appeal to maintain that Kaziu was not entitled to a hearing, it does not argue that resentencing – the district court's two-year reduction of Kaziu's sentence – was impermissible on these facts. The government could perhaps have cross-appealed on the ground that the court abused its discretion by not choosing the remedy of correcting the sentence, or

that the reduced sentence imposed on Kaziu on the unaffected counts should be vacated as procedurally improper. But it did not. We therefore have no occasion here to address whether the government was in any way aggrieved by the district court's decision to resentence. There is no obstacle, however, to Kaziu's objection to the procedure under which he was resentenced. Kaziu argues that he deserved a *greater* reduction than the district court provided, and he might well have achieved such a reduction had the proper procedures been followed. For example, if allowed the right of allocution, he might have been able to persuade Judge Block that his rehabilitation was more profound, and entitled to greater weight, than might appear on a paper record. He is thus fully entitled to appeal on the ground that the district court did not *properly* resentence him.

## III.   What Difference Does It Make?

The panel is unanimous about what needs to be done in this case. I fully concur in the judgment, which requires the district court, on remand, to engage in a proper resentencing. So the question naturally arises, why do I complain (and at such great length!) about the route the majority takes in getting to that result? Why can't we all just get along?

The principal importance of the distinction is that the majority's approach

28

constrains the discretion granted to district judges by § 2255, and, in my view, does so unnecessarily. District judges are in the business of making sentencing decisions. Whatever their backgrounds before coming on the bench, their job as district judges quickly shapes them into sentencing judges. The vast majority of criminal cases do not go to trial. Sentencing becomes the most important decision that judges make in most of those cases. That is not to say that district judges always execute that responsibility wisely. But they are steeped in the rules and procedures attendant on sentencing, and in the substantive decisions that they have to make, week in and week out, about the appropriate sentences to be imposed. Appellate judges do not share that experience – indeed, for the most part, we have abdicated substantive review of sentences, undertaking to correct sentences as "substantively unreasonable" only when the sentence "cannot be located within the range of permissible decisions." *United States v. Thavaraja*, 740 F.3d 253, 259 (2d Cir. 2014) (quotation marks omitted); *see, e.g., United States v. Sawyer*, 907 F.3d 121, 126 (2d Cir. 2018) (affirming substantive reasonableness of twenty-five year sentence, imposed on resentencing after previous appellate review had found the original thirty year sentence to be substantively unreasonable, while noting that "[t]he sentence is barbaric without being all that

29

unusual").

We do that precisely because we lack expertise, but our reticence further restricts our ability to assess what are and what are not reasonable choices. I would be very cautious about telling judges how to select among remedies that Congress has given them in order to effectuate a just result where some form of error has later been identified on collateral review – which, in practical terms, often means that the highest and most remote of appellate judges have changed the rules after the fact to overturn prosecutorial or judicial decisions that appeared reasonable or even routine when made. That such newly discovered errors need to be corrected is axiomatic, but precisely *how* to accomplish the repair when a brick has been removed from a sentencing structure is not always obvious from the appellate cloister. A judge who has the daily experience of creating such structures is better suited to exercising that discretion than appellate judges who may have little such experience, or whose experience may date from the time of an earlier sentencing regime.

That is not to say that appellate judges should be mindlessly deferential. But it does suggest that caution is in order before removing a tool from the district judge's toolbox, or dictating how particular tools should be utilized. At

30

the very least, we should not tell a district judge that he erred in failing to do something that he actually, and explicitly, *did*, and thereby tell other district judges, on the strength of that erroneous conclusion, that they ought presumptively to select one remedy rather than another. Appropriate caution in reaching out to unnecessarily decide issues counsels against dictating a rule about how discretion should be exercised, when in fact the case before us does not present that issue.

This case is a simple one, and it can be – and should have been – decided simply. The district court did err, but not because this case is one in which resentencing was mandated. Since the judge did choose that remedy, and no party argues that the choice was wrong, we have no occasion to direct that other judges should in most circumstances make the same choice. What is clear is that, having made that choice, the judge was required to follow the procedures occasioned by that choice. That seems to me an unexceptionable conclusion. We ought not lay down rules for unanticipated circumstances by misconstruing the circumstances before us, particularly when the rules governing the actual circumstances of this case are clear and well established.

I therefore respectfully concur only in the ultimate conclusion that the

district court, having decided to resentence Kaziu on the counts unaffected by the error that led to vacating the firearms count in the indictment, must conduct that resentencing pursuant to the rules entailed by that decision, and thus concur in the judgment, but not the reasoning, of the Court.

## IV.  A Postscript on the Other Concurrence and the Majority's Response

I add some further thoughts in response to Judge Calabresi's concurring opinion, and the majority's brief response to the present opinion. Judge Calabresi's opinion states that while he fully agrees that the case can be decided on the grounds advanced in his opinion for the Court, he believes that we should actually go further, and hold that in *every* case in which a conviction on a single count is vacated on collateral review under § 2255, the district court may not simply correct the error and is always required to engage in a complete resentencing unless that resentencing would be "strictly ministerial." We should do that, he contends, because that is what we require when we remand a case for resentencing on a direct appeal. *See* Concurring Op. (Calabresi, J.), ante, at 2; *see also United States v. Powers*, 842 F.3d 177, 179 (2d Cir. 2016); *Rigas*, 583 F.3d at 116–17, *United States v. Quintieri*, 306 F.3d 1217, 1228 & n.6 (2d Cir. 2002)**.** Imposition of such symmetry would of course eliminate the narrow exception

32

recognized in the majority opinion; our inflexible practice on direct appeal does not change because the case is being remanded to the same judge, or because the appealing defendant has not offered any evidence of rehabilitation in the relatively short time between the imposition of sentence and the resolution of his appeal.

The only affirmative reason offered for this outcome is the appeal of symmetrical treatment of direct appeals and collateral review. That is hardly a persuasive rationale for extending a rule that Judge Calabresi himself acknowledges makes us an outlier among the Circuits.

More importantly, the argument for symmetry ignores the obvious distinctions between direct and collateral review. Our case law mandating remand for resentencing on direct review concerns what *we* choose to require district courts to do when *we* identify an error in the conviction. That, it seems to me, is a question about the scope of *our* discretion. No statute (or binding precedent from the Supreme Court) limits our choice, and we have chosen to remand for complete resentencing. Like Judge Calabresi, I put aside any doubt about the wisdom of our choice; our own precedent binds us, and the mandates that we issue to the district courts on direct appeals bind those courts to comply

with the global resentencing that we demand.

But the situation on collateral review is different. In that situation, there *is* a binding rule that is exogenous to our discretion. *Congress* has outlined the procedures to be followed on collateral review in federal cases. It has channeled petitions for such review to "the court which imposed the sentence," 28 U.S.C. § 2255(a), and directs that court – the *district* court – upon finding an error that justifies collateral attack, to "discharge the prisoner *or* resentence him *or* grant a new trial *or* correct the sentence *as may appear appropriate*," *id*. § 2255(b) (emphasis added). In other words, Congress has vested the decision as to the appropriate remedy to the district court, with instructions to select a remedy that "appear[s] appropriate." *Id*. I fail to see how we, as a Court of Appeals reviewing the district court's choice, obtain the authority to essentially *delete* one of the options offered to the district court by Congress, that of simply "correct[ing]" the sentence, in the interest of imposing a result symmetrical to our self-imposed rule on direct appeal. The statute authorizing collateral review uses unmistakable language of discretion. That language surely allows us to review for the *abuse* of that discretion, but it allows no more than that.

And how should we identify an abuse of discretion when a district court

34

finds it "appropriate" to correct an error in a count of conviction by simply deleting the sentence imposed on that now-vacated count? The logical question to ask is whether, on the record before the district court, the district court had a reasonable ground to conclude that declining to resentence the prisoner on other counts of conviction unaffected by the error was a remedy sufficient to place the prisoner in the position that he would have been in had the error not been committed in the first place. Neither the majority opinion nor Judge Calabresi's concurrence engages with the record in this case in an effort to show that it would have been unreasonable for a district court, *on this record*, to reach such a conclusion. A review of facts of the case and of Judge Gleeson's explanation of his sentence, as set forth above, gives no basis for concluding that the mere excision of the conviction and concurrent sentence on the § 924(o) count would be insufficient to leave Kaziu in the same position that he would have been had the prosecutor failed to charge that offense at the outset of the case.

Where the issue arises in a direct appeal, the district court has committed an error, and it is for us to decide what to do about it. In a departure from the practices in other federal courts of appeals, we have elected to avoid engaging in that kind of review and have instead chosen to remand, where such errors are

found, for a complete resentencing. So be it. But the circumstances in such cases are quite different from those in which the district court itself has identified an error on collateral review, and has exercised the discretion provided to it by statute to determine an appropriate remedy.

Finally, neither Judge Calabresi's concurrence nor the opinion for the Court engages with the most glaring flaw in the majority's disposition of this case. The vast bulk of the analysis in all three opinions concerns an issue that simply is not presented by the record before us. The majority, Judge Calabresi writing for himself, and I in this opinion all address a matter that is properly formulated in the subjunctive: *would it have been* an abuse of discretion *had* Judge Block chosen to leave the sentences on the unaffected counts untouched, and instead "correct[ed]" the error by excising the concurrent sentence on the invalid count? Neither of the two opinions authored by Judge Calabresi recognizes that Judge Block in fact *did* what those opinions say that he should have done – he both vacated the invalid count and imposed a new, lower, sentence on the other counts. In other words, Judge Block resentenced. As discussed above, he erred by

failing to comply with the procedures incumbent on that decision.[1]

---

[1] I do not agree that the disposition I propose would allow Judge Block, at this stage of the proceeding and on this record, to now renounce his earlier decision and forgo resentencing. *See* Concurring Op. (Calabresi, J.), *ante*, at 16 n.12. Absent some extraordinary rationale unforeseeable to me, it would seem a classic abuse of discretion for the district court, having decided that resentencing on the remaining counts was appropriate, to announce that it had changed its mind and would now prefer to avoid the bother of complying with the procedural requisites of resentencing. Of course, if the record presented at an in-person resentencing undermined Kaziu's claims of rehabilitation, or otherwise justified a refusal to lower the sentences on those counts, that would be a different matter, but that would still be a resentencing and not a mere correction of the erroneous judgment.